IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL MCCLAIN,                      )
                                      )     2:12-cv-00765-GEB-GGH
                Plaintiff,            )
                                      )
        v.                            )     ORDER GRANTING AND DENYING IN
                                      )     PART DEFENDANT'S MOTION FOR
CENVEO CORPORATION,                   )     SUMMARY JUDGMENT
                                      )
                Defendant.            )
_____)

Defendant moves for summary judgment, or in the alternative, partial summary judgment on each of Plaintiff's claims. Plaintiff's Complaint consists of the following claims: a state employment disability discrimination claim under California's Fair Employment and Housing Act ("FEHA"); a retaliation claim under California's Family Rights Act ("CFRA"); FEHA claims that defendant failed to engage in the interactive process and failed to provide Plaintiff reasonable accommodation; a CFRA claim that Defendant interfered with Plaintiff's rights; and a wrongful termination claim based on public policy.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (citation omitted). If the movant satisfies its "initial burden," "the nonmoving party must set forth . . . '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

Further, Local Rule 260 requires each summary judgment motion to be accompanied by a "Statement of Undisputed Facts" to which the nonmovant is required to respond. This procedure is required for identification of the facts that parties assert are material, disputed or undisputed. If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant]'s statement of undisputed facts," the nonmovant could be "deemed to have admitted the validity of the facts contained in the [movant]'s statement." *Beard v. Banks*, 548 U.S. 521, 527 (2006).

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court [in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),] for trying claims of discrimination . . . ."[1] *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); *see also Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir. 1989) (applying *McDonnell Douglas* burden-shifting test to a retaliation claim). "[T]he *McDonnell Douglas* test places on the

_____

[1] Plaintiff's leave claims are brought under state law. However, "[s]ince CFRA adopts the language of the [federal Family and Medical Leave Act (")FMLA(")] and California state courts have held the same standards apply, FMLA [and CFRA] leave [are used interchangeably] for the remainder of this opinion." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir. 2003).

2

plaintiff the initial burden to establish a prima facie case of discrimination[, and if] "the plaintiff establishes a prima facie case, a presumption of discrimination arises [and] the burden shifts to the employer to . . . produc[e] admissible evidence . . . that its action was taken for a legitimate, nondiscriminatory reason." <u>Id.</u> at 354–56. "If the employer sustains this burden, the presumption of discrimination disappears[, and t]he plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." <u>Id.</u> at 356.

> When an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden. Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the prima facie case] or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." If the employer meets its burden, the discharged employee must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing."

<u>Lawler v. Montblanc N. Am., LLC</u>, 704 F.3d 1235, 1242 (9th Cir. 2013) (citation omitted) (first and second alterations in original) (omissions in original) (quoting <u>Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.</u>, 642 F.3d 728, 745 (9th Cir. 2011)).

"To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." <u>Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003). "[T]he employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy

of credence,' and hence infer 'that the employer did not act for the [asserted] non-discriminatory reasons.'" <u>Morgan</u>, 88 Cal. App. 4th at 75 (citations omitted) (alteration in original) (quoting <u>Hersant v. Dep't of Social Servs.</u>, 57 Cal. App. 4th 997, 1005 (1997); <u>Horn</u>, 72 Cal. App. 4th at 807).

## II. UNCONTROVERTED FACTS

The following uncontroverted summary judgment facts exist under Local Rule 260(b). In 1996, Plaintiff began working for a predecessor company of Defendant as a machine adjuster, and in 1999 was promoted to lead adjuster, a position he held until the end of his employment with Defendant. (Pl.'s Response to Def.'s Statement of Undisputed Mat'l Facts ("UMF") 2–3, ECF No. 20.) Defendant's Sacramento facility, at which Plaintiff worked, used a point-based attendance policy under which certain absences trigger points, and consequences result when an employee reaches certain point levels. (UMF 8, 10.) Under Defendant's attendance policy, certain absences–such as one supported by a doctor's note–trigger a half-point, while other absences–such as a hospital admission or an absence protected by the Family and Medical Leave Act ("FMLA")–trigger zero points. (UMF 11–12.) If an employee receives nine attendance points, he is issued a written warning; if an employee receives eleven attendance points, he receives a two-day suspension; if an employee receives twelve attendance points, he is terminated. (UMF 13–14.) Plaintiff acknowledged receipt of copies of Defendant's attendance policy in both 2007 and early 2011 and understood that receiving twelve attendance points would result in termination under the policy. (UMF 9, 16.) Since at least 2007, Defendant has consistently enforced its policy that twelve attendance points results in termination. (UMF 15.)

Plaintiff sought CFRA leave for his depression in 2011. (UMF 18; Pl. Decl. ¶ 5.) Plaintiff's doctor, Dr. Saini, approved this leave of absence beginning January 3, 2011, through January 7, 2011, meaning Plaintiff could return to work on Monday, January 10, 2011. (UMF 20; Robison Decl. ¶ 6.) Dr. Saini later completed FMLA certification paperwork, which stated Plaintiff's condition began on December 30, 2010, and qualified him for intermittent leave. (UMF 21, 24.) Defendant approved Plaintiff's requests for continuous medical leave from December 30, 2010, to January 7, 2010. (UMF 23, 26.) On January 28, 2011, human resources representative Sandra Robison ("Robison") instructed Plaintiff on the procedure he should follow to have an absence covered as FMLA absence. (UMF 27; Robison Decl. ¶ 16.)

On January 14, 2011, Plaintiff woke up in the emergency room after drinking "at least five beers" the night before. (UMF 29–30.) While in the emergency room, Plaintiff was administered a blood alcohol test, a CT scan, and blood work, and was evaluated by a doctor. (Pl.'s Response to UMF 36; Pl. Decl. ¶ 7.) Plaintiff was discharged from the emergency room on January 14, 2011, at which time he received "Patient Discharge Instructions for Care at Home"; the instructions included the following handwritten statement on the line labeled "Impression:" "scalp hematoma, s/p fall, alcohol intoxication." (UMF 37; Ex. C-16 at 000009.) Although Plaintiff had been scheduled to work in the early morning on January 14, 2011, he did not call in prior to his shift; when he did call in that afternoon, he told Robison that he thought he had been mugged since he could not find his wallet or phone. (UMF 38–41.) Plaintiff provided Robison a copy of the emergency room discharge notice on January 17, 2011; the portion that said "alcohol intoxication" on the copy he gave Robison had been blacked out. (UMF 43.)

"[O]n January 17, 2011, [Plaintiff] left work early stating that his 'head hurt,'" and "[he] did not say anything" at the time "about his depression, or about FMLA leave." (UMF 44-45.) Plaintiff did not see his doctor on January 17, 2011, but he was not able to do so since the doctor's office was closed in observance of Martin Luther King, Jr. Day. (UMF 46; Pl.'s Response to UMF 46 (citing Pl. Dep. 96:12-97:5).)

"On January 18, 2011, Plaintiff called in sick and did not inform anyone that his absence was for a different reason than his January 17, 2011 absence." (UMF 47.) Plaintiff did not see his doctor on January 18, 2011.[2] (UMF 48.) "Plaintiff missed work on January 19, 2011 to attend an appointment with Dr. Saini," and provided Robison with a note from Dr. Saini. (UMF 49, 53; Ex. C-15.) The medical records from that visit state that Plaintiff was "there for followup to his ER visit" and also state:

> Depression with anxiety. Plan: Continue on Zoloft. I have advised him to use Xanax only as needed and not 3 times a day as he has been doing. He is to avoid using alcohol under all circumstances while taking Xanax. Staying off alcohol may be a very good idea, as he is emotional. He will also call and set up to see a clinical psychologist, will call today.

(UMF 50; Ex. 18 at pages 2-3 of 17.) Plaintiff did not submit FMLA Intermittent Leave Acknowledgment forms for his absences on January 14, 17, 18, or 19, 2011, but did submit Absentee Reports for January 17, 18, and 19, 2011, on which he stated "FMLA" as the reason for those

---

[2] Plaintiff disputes this fact by arguing that he contacted his doctor's office on January 18, 2011; however, he provides no evidence that he actually saw his doctor on that date. Plaintiff's "[b]are assertion[] or unsupported conclusion" is not sufficient to oppose Defendant's stated undisputed fact. Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1279 (9th Cir. 1993).

absences. (UMF 51, 65; Pl.'s Response to UMF 53; Pl.'s Response to UMF 69.) Plaintiff never provided documentation from a doctor verifying that his January 17 and January 18 absences were connected to his FMLA condition. (UMF 52.)

Plaintiff had 8.5 attendance points accrued for absences prior to December 2010. (UMF 57.) Plaintiff was assessed two attendance points for his absences on December 29 and 30, 2010, which brought his total to 10.5 attendance points, resulting in Defendant issuing Plaintiff a written performance improvement report ("PIF") under Defendant's attendance policy on January 20, 2011. (UMF 54, 56.) Defendant issued an amended PIF reducing Plaintiff's point total to 9.5 after it received Dr. Saini's written certification that Plaintiff's FMLA condition had commenced on December 30, 2010. (UMF 60-61.) Plaintiff never obtained a revised FMLA form from Dr. Saini changing the starting date of his depression condition to December 29, 2010. (UMF 62.) Plaintiff never provided Defendant with documentation excusing the absences of January 14, 17, and 18, 2011, as FMLA-qualifying events.[3] (UMF 64.) On January 31, 2011, Robison informed Plaintiff that his absences of January 14, 17, 18, and 19, 2011, had resulted in his attendance points totaling 12.5 points and that he was being placed on a two-day suspension during which time he could provide Defendant with documentation that could excuse enough of his absences to bring him below the 12-point

---

[3] Plaintiff disputes this fact with his deposition testimony as follows: "I made attempts to contact my doctor. And I believe at that point that's when he might have been out of the country." (Pl.'s Dep. 130:3-5 (cited in Pl.'s Response to UMF 64).) However, he does not "specifically . . . [controvert the] facts identified in [D]efendant's statement of undisputed facts" that he never provided such documentation, and therefore "is deemed to have admitted the validity of the facts contained in [Defendant]'s statement." Beard, 548 U.S. at 527.

termination level.[4] (UMF 66-69.) Plaintiff did not submit an FMLA Intermittent Leave Acknowledgment form or anything further from a doctor to reduce his point total below 12 points, nor did he request additional time to obtain documentation from his doctor.[5] (UMF 65, 71, 74.) Defendant terminated Plaintiff on February 10, 2011. (UMF 73.)

### III. DISCUSSION

**A. FEHA Disability Discrimination Claim**

Defendant seeks summary judgment on Plaintiff's disability discrimination claim contending that Plaintiff has not satisfied the prima facie case element that requires him to show that "the action occurred under circumstances suggesting discriminatory motive." (Def.'s Mot. 12:3-4.) Defendant seeks in the alternative summary judgment on the pretext issue, arguing that Plaintiff has not established that

---

[4] Plaintiff disputes UMF 69 with the following deposition testimony: "[B]asically, they had told me that I just needed to get something from my doctor and it was a simple fix. I didn't know that at that time I couldn't use those other FMLA forms. And, quite honestly, I can't say why I didn't use one of these [FMLA] forms." (Pl. Dep. 120:17-20 (cited in Pl.'s Response to UMF 69).) However, Plaintiff's confusion about what documentation he needed to submit to Defendant to reduce his point total below 12 points does not "specifically . . . [controvert duly supported] facts identified in [D]efendant's statement of undisputed facts," and therefore Plaintiff "is deemed to have admitted the validity of the facts contained in [Defendant]'s statement." <u>Beard</u>, 548 U.S. at 527.

[5] Plaintiff disputes that he failed to submit required documentation and supports his position with his deposition testimony as follows: "I heard [the hospital administrator] explain to Sandra [Robison] that she cannot speak for the doctor about the treatment program or the treatment going on that he is giving and that he is out of country at this time and, I believe, at that point didn't know when he would be back." (Pl. Dep. 131:17-22 (cited in Pl.'s Response to UMF 71).) However, this testimony does not "specifically . . . [controvert duly supported] facts identified in [D]efendant's statement of undisputed facts," and therefore Plaintiff "is deemed to have admitted the validity of the facts contained in [Defendant]'s statement." <u>Beard</u>, 548 U.S. at 527.

Defendant's "proffered reason for processing [Plaintiff's] termination was pretextual." (Def.'s Mot. 13:15–16.)

Plaintiff counters that he has "direct evidence of discriminat[ion]," has "establish[ed] a prima facie case of disability discrimination," and has "evidence of Defendant's pretextual motive." (Opp'n 11:14, 12:6, 16:10–11.)

To establish a prima facie case of disability discrimination under FEHA, "[P]laintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, . . . and (4) some other circumstance suggests discriminatory motive." <u>Guz</u>, 24 Cal. 4th at 355. "The employee can satisfy [his] burden by 'produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual.'" <u>Lucent Techs., Inc.</u>, 642 F.3d at 745 (second alteration in original) (quoting <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal. App. 4th 215, 224 (1999)). "Circumstantial evidence 'of "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate' on an improper basis." <u>Morgan v. Regents of Univ. of Cal.</u>, 88 Cal. App. 4th 52, 69 (2000) (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1222 (9th Cir. 1998)) (citing <u>Horn v. Cushman & Wakefield W., Inc.</u>, 72 Cal. App. 4th 798, 807 (1999)). "Assertions and conjecture that an employe[r] had a discriminatory motive will not establish pretext." <u>Jackson v. Simon Prop. Grp., Inc.</u>, 795 F. Supp. 2d 949, 963 (N.D. Cal. 2011). "Pretext may be inferred from the timing of the discharge decision, the identity of the decision maker, or by the discharged employee's job performance before termination." <u>Hanson</u>, 74 Cal. App. 4th at 224 (citing <u>Flait v. N.</u>

_Am. Watch Corp._, 3 Cal. App. 4th 467, 476, 479 (1992)). "If, considering the employer's non-discriminatory explanation for its actions, 'the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory,' summary judgment should be granted in favor of the employer." _Jackson_, 795 F. Supp. 2d at 963 (quoting _Guz_, 24 Cal. 4th at 361).

Defendant has met its initial burden of showing that the evidence is insufficient to permit drawing a rational inference that its actual motive was discriminatory by presenting evidence that Defendant followed its standard attendance policy with respect to Plaintiff. (UMF 8–16, 51–52, 54–56, 58–63, 65, 67–68.) Specifically, Defendant's summary judgment motion shows that Plaintiff was terminated because he exceeded the twelve attendance points "which results in termination under [Defendant's] attendance policy." (UMF 67.)

Further, Defendant's articulated reason for Plaintiff's termination is "a legitimate nondiscriminatory reason" that is "_facially unrelated to prohibited bias_" and therefore, unless other evidence creates a triable fact, Defendant's stated reason for terminating Plaintiff "preclude[s] a finding of discrimination." _Guz_, 24 Cal. 4th at 358; _see_ _Thorne v. City of El Segundo_, 726 F.2d 459, 467 (9th Cir. 1983) (stating that "[a]ttendance may be a legitimate factor in an employment decision"); _see also_ _Trujillo v. U.S. Postal Serv._, 330 Fed. App'x 137, 140 (9th Cir. 2009) (recognizing absenteeism that had been documented by defendant employer as legitimate, nondiscriminatory reason for termination).

Since Defendant's "stated cause for terminating Plaintiff is 'facially unrelated to prohibited bias,' the burden shifts . . . to [Plaintiff] to prove that the reason is pretext for unlawful

discrimination." <u>Lawler</u>, 704 F.3d at 1244. Plaintiff's evidence consists of (1) the temporal proximity between his filing for FMLA leave and his termination, (UMF 73; PAUMF 5-7, 47); and (2) Robison's deposition testimony that the corporate office expressed concern about the Sacramento facility having too many employees on FMLA leave at the same time. (PAUMF 29 (citing Robison Dep. 183:9-184:4, 184:15-20, 185:4-9).) This evidence is insufficient to support a finding that Defendant's actions were "false or pretextual." <u>Sandell v. Taylor-Listug, Inc.</u>, 188 Cal. App. 4th 297, 314 (2010).

Therefore, Defendant has shown the absence of a genuine issue of material fact on Plaintiff's disability discrimination claim, and its motion on this claim is granted.

**B. CFRA Retaliation Claim**

Defendant also seeks summary judgment on Plaintiff's CFRA retaliation claim, which is premised on allegations that Defendant retaliated against Plaintiff by terminating him based on his CFRA leave. (Def.'s Mot. 10:21-11:2; <u>see</u> Complaint ¶¶ 87-88.)

To succeed on this claim, Plaintiff "must show 'that []he engaged in [the] protected activity [of taking CFRA leave], that []he was thereafter subject by h[is] employer to adverse employment action, and that a causal link exists between the two.'" <u>Jordan v. Clark</u>, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting <u>Cohen v. Fred Meyer, Inc.</u>, 686 F.2d 793, 796 (9th Cir. 1982)) (citing <u>Wrighten v. Metro. Hosps., Inc.</u>, 726 F.2d 1346, 1354 (9th Cir. 1984)).[6] "The causal link may be established by an inference derived from circumstantial evidence, 'such

---

[6] California courts use the elements of FMLA retaliation claims in deciding CFRA retaliation claims. <u>See</u> <u>Faust v. Cal. Portland Cement Co.</u>, 150 Cal. App. 4th 864, 885 (2007) (citing <u>Dudley v. Dep't of Transp.</u>, 90 Cal. App. 4th 255, 261 (2001)).

as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Id. (alteration in original) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)) (citing Miller v. Fairchild Indus., 797 F.2d 727, 731–32 (9th Cir. 1986); Manniko v. Harrah's Reno, Inc., 630 F. Supp. 191, 197 (D. Nev. 1986)). "[P]roximity in time between [Plaintiff's] leave and [his termination] provides supporting evidence of a connection between the two events." Xin Liu, 347 F.3d at 1137 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)).

Plaintiff satisfies the first two elements of a retaliation claim by showing he took CFRA leave and subsequently was terminated. (UMF 55, 60, 73.) To prove a causal link between the leave he took and his termination, Plaintiff offers evidence from which a reasonable inference can be drawn that his termination was in retaliation for his taking protected CFRA leave based on both Defendant's knowledge of Plaintiff's CFRA leave and the temporal proximity between when Plaintiff filed for leave (January 3, 2011) and when he was terminated (February 10, 2011). See Calderon v. Shell Pipeline Co., L.P., No. 11-56299, 2013 WL 1694764, at *1 (9th Cir. Apr. 19, 2013) (finding a timespan of "about a month" and conflicting evidence as to the defendant's knowledge of the plaintiff's participation in protected activity sufficient for a retaliation claim to survive summary judgment); Bell v. Clackamas Cnty., 341 F.3d 858, 865–66 (9th Cir. 2003) (holding that temporal proximity supported a finding of a causal link when the plaintiff had been placed on administrative leave approximately three weeks after complaining, had been returned to duty and then placed back on leave not quite three

months after complaining, and ultimately had been terminated seven months after complaining).

However, for the reasons stated above regarding Plaintiff's disability discrimination claim, Defendant has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff, regarding which Plaintiff has not created a genuine issue of material fact. Therefore, Defendant has shown the absence of a genuine issue of material fact on Plaintiff's CFRA retaliation claim, and its motion on this claim is granted.

**C. Wrongful Termination in Violation of Public Policy**

Defendant also seeks summary judgment on Plaintiff's wrongful termination claim premised on violation of public policy. Defendant argues: "Although Plaintiff asserts separate nominal causes of action for disability discrimination, wrongful termination in violation of public policy, and CFRA retaliation, the claims are all asserting the same basic wrong—i.e., that [Defendant] terminated Plaintiff's employment because he took intermittent medical leave." (Def.'s Mot. 10:21-11:1.) Plaintiff does not pointedly respond to Defendant's argument. "When deciding whether an asserted evidentiary dispute is genuine, we inquire whether a jury could reasonably find in the nonmovant's favor from the evidence presented." Emeldi v. Univ. of Or., 673 F.3d 1218, 1230 (9th Cir. 2012); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."). Here, the evidence presented does not support Plaintiff's

pleading in which he alleges that his termination violated public policy. In resisting a motion for summary judgment, the opposing party may not rely upon "the mere pleadings themselves." <u>Celotex</u>, 477 U.S. at 324.

Therefore, Defendant's motion for summary judgment on this claim is granted.

**D. CFRA Interference Claim**

Defendant also seeks summary judgment on Plaintiff's CFRA claim in which Plaintiff alleges that Defendant interfered with Plaintiff's right to take leave under CFRA. This claim consists of the following elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights. <u>Faust v. Cal. Portland Cement Co.</u>, 150 Cal. App. 4th 864, 879 (2007). "An interference claim under the FMLA (and thus the CFRA) does not involve the burden-shifting analysis articulated by the United States Supreme Court in <u>McDonnell Douglas</u>. . . . A violation of the [CFRA] 'simply requires that the employer deny the employee's entitlement to [CFRA] leave.'" <u>Id.</u> (quoting <u>Xin Liu</u>, 347 F.3d at 1135).

Plaintiff satisfies the second element of the claim since Defendant "den[ied] [Plaintiff]'s entitlement to [CFRA] leave" when it did not grant Plaintiff CFRA leave for the following dates, on which Plaintiff was assessed attendance points: December 29, 2010, and January 14 and 17–19, 2011. (UMF 51, 52, 58, 60, 62, 64–67, 70, 72.) Therefore, to prevail on this portion of its motion, Defendant must show that the first element is not satisfied; specifically, that Plaintiff was not statutorily entitled to CFRA leave for any date at issue.

Defendant argues that "Plaintiff cannot establish that he was statutorily entitled to CFRA leave on the January 14–19 absences at

issue." (Def.'s Mot. 16:16–17.) Defendant further argues that "Plaintiff admits that his January 14, 2011 emergency room visit for a head injury and alcohol intoxication was a separate incident not eligible for intermittent medical leave." (Id. 16:18–20 (citing Pl.'s Dep. 128:4–14).) Plaintiff rejoins that "Defendant's failure to designate Plaintiff's absences of December 29, 2010 and January 17–19[, 2011] as protected was itself a violation of Plaintiff's rights under the [CFRA]." (Pl.'s Opp'n 19:12–14.)

Plaintiff gave deposition testimony that he "[was]n't going to include [January] 14th [in his CFRA leave], but [was] going to include [January] 17th through the 19th." (Pl.'s Dep. 128:7–14.) Therefore, Defendant's motion for summary judgment on the CFRA interference claim is granted on Plaintiff's January 14 absence.

Defendant has not shown that Plaintiff was not statutorily entitled to CFRA leave on December 29, 2010. Therefore, Defendant has not satisfied its "initial burden of demonstrating the absence of a genuine issue of material fact" concerning Plaintiff's December 29 absence, and this portion of its motion is denied. Celotex, 477 U.S. at 323.

Defendant satisfies its initial burden regarding Plaintiff's January 17 absence by presenting evidence that Plaintiff took leave on that date because his "head hurt" rather than for a CFRA-approved reason. (Robison Decl. ¶¶ 9–10; Pl.'s Dep. 96:12–17.) Specifically, Defendant cites Plaintiff's negative response during his deposition testimony concerning his January 17 absence, as follows: "Q. Now you left work on the 17th? A. Yes. Q. And you said you were leaving because your head hurt? A. Yes . . . Did you say anything beyond 'I'm leaving because my head hurts'? A. No." (Pl.'s Dep. 96:12–17, 9:22–24.) This

testimony is insufficient to support drawing a reasonable inference that Plaintiff's referenced head pain was connected to his depression and anxiety for which he was entitled to CFRA leave. Therefore, Defendant's motion on Plaintiff's January 17 absence concerning Plaintiff's CFRA interference claim is granted.

Defendant's motion on Plaintiff's CFRA interference claim concerning Plaintiff's January 18 and 19 absences is denied since Plaintiff presents evidence showing the existence of a genuine issue of material fact concerning these dates.

**E. Failure to Engage in the Interactive Process Claim**

Defendant also seeks summary judgment on Plaintiff's failure to engage in the interactive process claim, arguing that since Defendant "reasonably accommodated Plaintiff's alleged disability . . . [it] necessarily forecloses any claim that [Defendant] failed to engage in the interactive process." (Def.'s Mot. 15:14-15 (citing Hanson, 74 Cal. App. 4th at 229; Watkins v. Ameripride Servs., 375 F.3d 821, 829 n.5 (9th Cir. 2004)).) Defendant further argues that "the requirement that an employer and employee engage in the interactive process is merely a tool to help ensure that they find a reasonable accommodation, if possible." (Id. 15:21-22 (citing Jensen, 85 Cal. App. 4th 245).)

Plaintiff rejoins that "instead of engaging in the requisite interactive process, Defendant made it difficult for Plaintiff by assessing attendance points and ultimately terminating him due [to] his absences which were related to his disability." (Pl.'s Opp'n 18:10-12.)

"[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." Yeager v.

Corr. Corp. of Am., --- F. Supp. 2d ---, No. 1:12-cv-00162-AWI-JLT, 2013 WL 1903733, at *3 (E.D. Cal. 2013) (internal quotation marks omitted) (alterations in original) (quoting Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 984 (2008)). "The interactive process determines which accommodation is required." Wysinger v. Auto. Club of S. Cal., 157 Cal. App. 4th 413, 425 (2007) (citing Claudio v. Regents of the Univ. of Cal., 134 Cal. App. 4th 224, 242 (2005); Jensen, 85 Cal. App. 4th at 263 n.7). Here, the parties "identif[ied] an accommodation that [would have] allow[ed Plaintiff] to perform the job effectively," namely leave time. Yeager, 2013 WL 1903733, at *3.

Plaintiff does not dispute that "[t]he only accommodation that [he] requested was leave time." (UMF 84.) Further, Plaintiff was granted CFRA-approved leave time for December 30, 2010; January 3 through 7, 2011; and January 28, 2011. (UMF 20, 55, 60.)[7] Since the parties "determine[d] which accommodation [wa]s required," Wysinger, 157 Cal. App. 4th at 425, Plaintiff's claim for failure to engage in the interactive process fails. Therefore, Defendant's summary judgment motion is granted on this claim.

**F. Failure to Provide Reasonable Accommodation Claim**

Defendant also seeks summary judgment on Plaintiff's failure to provide reasonable accommodation claim. (Def.'s Mot. 14:11–15:9.) "'The essential elements of [this] claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified

---

[7] Plaintiff disputes UMF 20, which states: "Dr. Saini approved a leave of absence beginning January 3, 2011 through January 7, 2011, meaning Plaintiff could return to work Monday, January 10, 2011." (UMF 20.) Plaintiff states: "Dr. Saini recommended that Plaintiff be off of work from January 3, 2011 until January 10, 2011." (Id. (citing Pl.'s Dep. 69:13–17, Ex. 13).) However, neither party disputes that Plaintiff went to work on January 10, 2011, (Robison Decl. ¶ 6), therefore, whether Dr. Saini approved Plaintiff's leave on that date is immaterial.

individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" Cuiellette v. City of Los Angeles, 194 Cal. App. 4th 757, 766 (2011) (quoting Wilson v. Cnty. of Orange, 169 Cal. App. 4th 1185, 1192 (2009) (citing Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 256 (2000))). The claim's third element is the only one contested by the parties. (See Def.'s Mot. 14:18–15:9; Pl.'s Opp'n 19:2–9.)

Defendant argues that "the only 'accommodation' that Plaintiff requested was leave time." (Def.'s Mot. 14:18–19 (citing Pl.'s Dep. 140:10–12, 142:1–9); see UMF 84.) Defendant argues that it is entitled to summary judgment on this claim since "[e]ach time Plaintiff requested [FMLA leave] and [Defendant] received proper documentation supporting continuous or intermittent leave time, [Defendant] granted Plaintiff the requested leave." (Def.'s Mot. 14:19–20.) Defendant further argues "[t]here is no evidence whatsoever that [Defendant] failed to reasonably accommodate Plaintiff throughout his employment or that it would not have continued to accommodate him if it had received doctor's notes supporting his January 14–19th absences." (Id. 15:5–8.)

Plaintiff rejoins, arguing "that he notified Defendant several times that the absences of December 29 and January 17–19, 2011 were due to his disability, [but] Defendant made no attempt to reach out to him and have a good faith discussion about his requests." (Pl.'s Opp'n 19:2–5.)

Defendant provides the following evidence that it did not need to provide reasonable accommodation for Plaintiff's absences of January 14, 17, 18, and 19, 2011: "nothing [Plaintiff] provided [Robison on January 19, 2011,] indicated that his absences that week related to his

FMLA-qualifying condition." (Reply 3:6-8 (citing Robison Decl. ¶ 11, Ex. C-15).) Defendant also provides evidence showing "that when [Robison] called Plaintiff's doctor's office (at [Plaintiff's] request), the administrator told her that the doctor could not provide [FMLA] documentation because Plaintiff was seen elsewhere on January 14, 17 [and] 18 and for a different condition than the FMLA reason." (Def.'s Reply 7:16-19 (citing Robison Decl. ¶ 21).) Therefore, Defendant has shown that there is no genuine issue of material fact as to whether Defendant failed to accommodate Plaintiff's disability based on his absences on January 14, 17, and 18, 2011.

However, "a single failure to accommodate support[s] a finding of a failure to accommodate." A.M. v. Albertsons, LLC, 178 Cal. App. 4th 455, 465 (2009) (citing Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 291 (1988); Murray's Iron Works, Inc. v. Boyce, 158 Cal. App. 4th 1279, 1285 (2008)) (upholding a jury verdict for a plaintiff employee when the defendant employer consistently accommodated the plaintiff's disability for one year but failed to accommodate it on one occasion). Defendant offers the following declaration from Robison to demonstrate that Plaintiff's January 19 absence did not qualify for FMLA leave:

> On February 2, 2011, I received a voicemail from Plaintiff asking me to contact his doctor's head nurse to tell her what information we needed regarding his FMLA forms. Later that day I called Plaintiff's doctor's office in the presence of John Clune. I spoke with Plaintiff's doctor's office administrator. I explained in detail that the FMLA certification had been submitted and approved. She was under the impression that the FMLA had not been approved. I then asked directly about whether Plaintiff was treated on January 14, 2011 and January 17-19, 2011. She confirmed that Plaintiff was not treated by his doctor on January 14, 2011, or January 17-18, 2011, but that he was seen on January 19, 2011. The office administrator then stated she understood the situation, and said she would call Plaintiff to let him know they could not provide the documentation required because he was

1                      not treated at the clinic, but at another medical
                     facility for a condition other than the FMLA
2                      approved condition.

3 (Robison Decl. ¶ 21.) Robison also gave deposition testimony that she

4 "called [Dr. Saini's office] to get clarification on the memo covering

5 [Plaintiff's] absence on the 19th." (Robison Dep. 95:9–10 (citing Ex.

6 9).) Robison's declaration and deposition testimony do not demonstrate

7 the absence of a genuine issue of material fact as to whether

8 Plaintiff's January 19 absence qualified for FMLA leave since the office

9 administrator at Dr. Saini's office specifically stated "[Plaintiff] was

10 seen [by Dr. Saini] on January 19, 2011." (Robison Decl. ¶ 21.)

11 Defendant offers no evidence that Robison obtained information regarding

12 the <u>reason</u> for Plaintiff's January 19 absence. Therefore, a genuine

13 issue of material fact exists regarding whether Plaintiff was entitled

14 to FMLA-protected leave for the January 19 absence; if Plaintiff was

15 entitled to FMLA-protected leave on that date, then Defendant failed to

16 reasonably accommodate Plaintiff's disability.

17          Therefore, this portion of Defendant's motion is denied.

18                          **IV. CONCLUSION**

19          For the stated reasons, Defendant's summary judgment motion is

20 granted and denied in part as follows:

21          1. Defendant's motion on Plaintiff's claims alleging disability

22 discrimination, failure to engage in the interactive process,

23 retaliation, and wrongful termination in violation of public policy is

24 GRANTED;

25          2. Defendant's motion on Plaintiff's claim alleging failure to

26 provide reasonable accommodation for the January 19 absence is DENIED;

27

28

3.   Defendant's   motion   on   Plaintiff's   claim   alleging   CFRA interference is GRANTED concerning January 14 and 17, 2011; and DENIED with respect to December 29, 2010, and January 18 and 19, 2011.

Dated:   September 16, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge